IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| **NASON CONSTRUCTION, INC.,** * | |
| * | |
| Plaintiff, * | |
| v. * | Civil Case No. SAG-19-3013 |
| * | |
| **HEBREW QUALITY CONSTRUCTION, INC.,** * | |
| * | |
| Defendant. * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

With this Court's permission, Plaintiff Nason Construction, Inc. ("Nason") filed an Amended Complaint against Hebrew Quality Construction, Inc. ("Hebrew"), asserting claims for promissory estoppel, breach of contract, and declaratory judgment. ECF 23. Hebrew has filed a Motion to Dismiss, or, in the alternative, for Summary Judgment ("the Motion), ECF 24. This Court has considered the Motion, along with Nason's Opposition, ECF 27, and Hebrew's Reply, ECF 28. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Hebrew's Motion will be granted in part and denied in part.

**I.    FACTUAL BACKGROUND**

On July 23, 2014, Hebrew and Nason entered into a subcontract ("Subcontract") under which Hebrew would provide certain services relating to the renovation and resurfacing of the outdoor track at the stadium at the University of Maryland Eastern Shore ("UMES"). ECF 24-1. Nason, the general contractor, was to pay Hebrew $248,000 for Hebrew's site clearing and demolition work. ECF 24 at 4 ¶ 3. In Nason's view, Hebrew did not perform all of its contractually required work. The Subcontract allowed Nason to "withhold funds" from payment to Hebrew "to

cover all losses, damages and/or expenses (including attorneys' fees and costs) associated with . . . failure to carry out the work in accordance with the Subcontract." ECF 24-1 at 4.4.1.

On January 27, 2016, Nason's Director of Risk Management wrote a letter ("the Letter") to the Office of Procurement for UMES, detailing why Nason had withheld $248,302.53 in payments to Hebrew. ECF 24-2. According to the Letter, Nason had provided notice to Hebrew that it had withheld payment, and intended to backcharge Hebrew pursuant to its right to setoff for $21,348 in increased costs resulting from [Hebrew's] concrete bid withdrawal and the expense of retaining a different subcontractor, $49,500 for liquidated damages under Section 16.2.1.1 of the Subcontract, and $177,454.53 for overhead and expenses under Section 16.2.2 of the Subcontract, for a total backcharge of $248,302.53. ECF 24-2 at 1, 9.

According to Nason's Amended Complaint, more than two years later, on or around September 2018, Hebrew filed a Third Party Complaint against Nason in the Circuit Court of Maryland for Wicomico County ("the State Court Litigation"). ECF 23 ¶ 26. In the State Court Litigation, Hebrew contested Nason's backcharges for the first time, and sought to recover the backcharged amounts. *Id.* ¶¶ 27, 28. The State Court dismissed Hebrew's lawsuit with prejudice, concluding that Hebrew had failed to abide by the dispute resolution procedures in the Subcontract, which required mediation to occur before the parties could proceed to court or other binding dispute resolution. *Id.* ¶ 29.

After the dismissal of the State Court Litigation, Hebrew initiated mediation, which proved unsuccessful ("the Mediation"). *Id.* ¶ 32. Nason incurred attorneys' fees in connection with the State Court Litigation and the Mediation. *Id.* ¶¶ 31, 33. On October 14, 2019, the day before the instant lawsuit was filed, "Nason sent a letter to [Hebrew] formally backcharging [Hebrew] $57,837.68 for attorneys' fees and costs expended to date and requesting payment of those

2

amounts pursuant to the Subcontract." *Id.* at 34.  Hebrew has not reimbursed Nason for those fees and costs.  *Id.* ¶ 35.  Since October 14, 2019, "Nason has continued to incur additional attorneys' fess and costs, which total $82,439.23 to date and continue to accrue."  *Id.* ¶ 36.

On March 3, 2020, this Court held a hearing to discuss Hebrew's then-pending motion to dismiss the original complaint for failure to state a claim.  ECF 16.  At that hearing, the Court expressed its concerns that (1) Nason's claim for $248,302.53 appeared to be barred by the statute of limitations, and (2) even more fundamentally, Nason had not articulated a viable claim to recover $248,302.53 in monetary damages from Hebrew, since the facts alleged established that Nason, not Hebrew, remained in "possession" of the disputed funds by virtue of having withheld them from payments it owed to Hebrew.  Although Hebrew had previously asserted claims for those monies in the State Court Litigation and in the Mediation, those proceedings had concluded, with no payments changing hands.  Because, in this Court's view, Nason could not establish that the $248,302.53 in its possession constituted an actual "amount in controversy," the Court inquired as to whether the attorneys' fees Nason had expended defending against Hebrew's claims exceeded $75,000.  Nason's counsel represented that the amount did in fact exceed $75,000.  Given that representation, at the conclusion of the hearing, the Court granted Hebrew's Motion to Dismiss, but allowed Nason leave to amend its Complaint, if appropriate, to assert its claim for attorney's fees to establish the amount in controversy required for diversity jurisdiction.  ECF 15.

On April 3, 2020, Nason filed its Corrected Motion for Leave to Amend.  ECF 19.  Despite this Court's clearly expressed views regarding the viability of Nason's claim to recover $248,302.53, the Amended Complaint again asserts claims for those "damages" under theories of promissory estoppel and breach of contract, plus at least $82,43.23 in attorneys' fees.  ECF 19-2, ¶¶ 37-45.  The Amended Complaint also seeks "a declaration regarding the rights of the parties"

3

under the Declaratory Judgment Act. *Id.* ¶¶ 46-51.  Despite the Court expressing "grave concerns about the ultimate viability of Nason's assertion of federal jurisdiction" in light of what it perceived to be substantial risk that the actual amount in controversy fell short of $75,000, it granted Nason leave to file its Amended Complaint, given the liberal standards governing amendment of pleadings.  ECF 22 at 2.

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss

Hebrew has now filed a motion to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), or, in the alternative, a motion for summary judgment.  ECF 24.  A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions.'"); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  But, a plaintiff need not include "detailed

factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, a court is not required to accept legal conclusions drawn from the facts. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint,'" *Goodman*, 494 F.3d at 464 (emphasis omitted) (quoting *Forst*, 4 F.3d at 250).

### B. Motion for Summary Judgment

Hebrew attached the Subcontract and the Letter to its Motion, and asks, in the alternative, that summary judgment be granted in its favor. ECF 24. Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)). The mere existence

of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

Relevant to this case, summary judgment typically is not granted "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont*, 637 F.3d at 448-49. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To present the issue, the nonmovant is typically required to file an affidavit pursuant

7

to Federal Rule of Civil Procedure 56(d), explaining why "for specified reasons, it cannot present facts essential to justify its opposition," without further discovery. Here, no Rule 56(d) declaration has been filed, and Nason in fact attached its own evidence to its opposition, specifically the Affidavit of Thomas Nason, ECF 27-2, and the Subcontract, ECF 27-3. Accordingly, this Court deems it appropriate to treat this Motion as a motion for summary judgment, despite the fact that discovery has not occurred.

### III. ANALYSIS

#### A. Statute of Limitations

The heart of Hebrew's Motion is its contention that Nason's claims are time-barred, a position that has now been repeatedly addressed, at least in an informal fashion, by this Court. Hebrew contends that because Nason knew, as of January 27, 2016 when it wrote the Letter to UMES, that a dispute had arisen over $248,302.53, Nason had to file its Complaint seeking a judgment in that amount, at the latest, within three years of that date. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 (providing for a three-year statute of limitations based on the date a claim accrues); *Frederick Road Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 95-96 (2000) (explaining that accrual is determined by when a party has inquiry notice of its claim). Because Nason did not file its Complaint until October 15, 2019, Hebrew posits, its Complaint is time-barred.

Nason counters that it had no reason to believe, on January 27, 2016, that there was any dispute over the $248,302.53. ECF 27. It had withheld the monies from Hebrew, and Hebrew had not yet taken any action to contest that withholding. In Nason's view, no dispute or breach arose until September 11, 2018, when Hebrew sought to file its Third Party Complaint against Nason in the State Court Litigation. *Id.*

Nason's position is unpersuasive. The "breach of contract" that caused Nason to suffer $248,302.53 in damages was not Hebrew's unsuccessful filing of the State Court Litigation, but Hebrew's failure to complete its contractually required site-clearing and demolition work at UMES. That breach occurred, the damages were sustained, and Nason came to be on inquiry notice prior to January 27, 2016, as evidenced by the Letter. By the time Nason filed the instant action, Hebrew's efforts to recover the $248,302.53 had concluded unsuccessfully, and Nason was in exactly the same position as it had been since January, 2016—it had withheld $248,302.53 in payments from Hebrew, and no challenge from Hebrew was pending. Hebrew's intervening attempts at litigation did not toll or restart the clock that began running on or before January, 2016. Accordingly, summary judgment is granted in Hebrew's favor as to Nason's claims, in Counts One and Two of its Complaint, for $248,302.53 in damages, because those claims are barred by Maryland's three-year statute of limitations.[1]

**B. Attorney's Fees**

As described above, the Amended Complaint alleges that Nason had incurred a total of $82,439.23 in legal fees and costs as of the date of its filing. ECF 23 ¶ 36. The Subcontract allows Nason to recover attorney's fees in certain circumstances, which appear plausibly applicable in light of the allegations in the Amended Complaint. ECF 24-1 at 4.4.1 ("The Contractor may withhold funds from any progress payment to the Subcontractor, from retainage, or from final payment, to the extent that may be necessary to cover all losses, damages and/or expenses

---

[1] Additionally, as this Court referenced in the prior proceedings in this matter, the facts pled in the Amended Complaint suggest that Nason already recouped its $248,302.53, by withholding payments otherwise due to Hebrew. Because, for lack of a better way to explain it, the disputed funds are in Nason's possession, it has not suffered any harm, and is not entitled to a further judgment in its favor for that amount. Hebrew is not currently pursuing (and in fact, at this point, would be barred from pursuing by the very same statute of limitations at issue here) those funds from Nason, so there is no justiciable controversy with respect to that sum.

(including attorneys' fees and costs) associated with . . . (7) failure to carry out the work in accordance with the Subcontract or the Contractor's directions; . . . (10) any default or breach of the Subcontract."). Thus, this Court must consider Nason's claim for attorneys' fees in determining whether the Court's exercise of diversity jurisdiction is appropriate in this case. *See, e.g.*, *Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir. 1983) (noting the rule in diversity cases that "contractual provisions" can transform "attorneys['] fees into substantive rights to which the litigants are entitled," rendering them properly considered as part of the amount in controversy requirement); *Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 447-48 (2008) (explaining that contractual clauses providing for attorneys' fees are generally enforceable, and interpreted objectively according to their plain meaning).

Hebrew sets forth two fee-related arguments: (1) that Nason should not be entitled to collect attorney's fees, or (2) that if Nason can collect fees, the amount does not meet the $75,000 threshold. First, Hebrew argues that at least some of the $57,837.68 in fees as of October 14, 2019 must have been incurred in the preparation of the original Complaint, which was filed the next day. ECF 24 at 9-10. Because that original Complaint was dismissed by this Court, Hebrew contends that Nason should not be entitled to that component of its fee claim, in addition to whatever portion of the subsequent fees are attributable to "Nason's *failed* legal efforts." *Id.*

While Hebrew's claim may ultimately prove meritorious, in the absence of any evidence propounded by either party relating to the fee amounts attributable to various tasks, this Court is unable to state, to a legal certainty, that Nason has incurred less than $75,000 in potentially recoverable fees. *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) (holding that "the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional

amount to justify dismissal."). Nason appears to be asserting its claim in good faith, and while this Court may suspect that any ultimate award of fees might be less than $75,000 in light of Nason's limited degree of success in this litigation to date, Nason's claimed sum controls at this stage.

Second, Hebrew suggests that Nason's fee request, like its request for $248,302.53, is precluded because it arose out of the same time-barred breach of contract. Hebrew's argument lacks merit. Nason was not on inquiry notice in 2016 that Hebrew would file a State Lawsuit or a Mediation request years later, challenging Nason's entitlement to retain the funds it had withheld and backcharged, or that Nason would incur attorneys' fees as a result of Hebrew's actions. In the Amended Complaint, Nason has plausibly alleged that it is contractually entitled to recover the attorneys' fees it expended to defend against Hebrew's unsuccessful efforts. ECF 23. Moreover, Nason filed the instant litigation, including the Amended Complaint, well within three years of incurring the attorneys' fees at issue. Hebrew's Motion, therefore, will be denied as to Nason's claims to recover its attorneys' fees and costs, and the parties will proceed to discovery on that narrow issue. At the appropriate time with a more complete record, this Court can consider which of Nason's claimed fees are or are not recoverable.

### C. Declaratory Judgment

In Count III, Nason seeks a declaratory judgment "stating that Nason is entitled to withholding and backcharges in an amount in excess of $335,366.76, together with interest, costs of suit, counsel fees and such other relief as this Court deems just, proper and equitable." ECF 23 at 11. This Court has discretion to determine whether to issue a declaratory judgment. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)). As the Supreme Court explained, the "nonobligatory" language of the

Declaratory Judgment Act means that where a declaratory judgment is sought, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 288. In determining whether to entertain a declaratory judgment action, a court must consider whether declaratory relief would "serve a useful purpose in clarifying and settling the legal relations in issue," or would "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 594 (4th Cir. 2004) (internal citations omitted). Ultimately, a district court is permitted to decline to consider a declaratory judgment action when it has "good reason" to do so. *Id.*

Here, the declaratory judgment requested by Nason is entirely duplicative of its promissory estoppel and breach of contract counts, and would serve no useful purpose in clarifying and settling the parties' legal relations. To the extent that Nason is concerned about a hypothetical future suit from Hebrew seeking the withheld $248,302.53, this Court again notes that such a suit would be subject to the same statute of limitations at issue here. Any uncertainty that remains as to Nason's entitlement to any particular amount of attorneys' fees, meanwhile, can be resolved in the context of its other legal claims in this case. Thus, this Court will decline to exercise its discretion to entertain a declaratory judgment action, and will dismiss Count III. *See, e.g.*, *Torchlight Loan Servs., LLC v. Column Fin., Inc.*, No. 11 Civ. 7426, 2012 WL 3065929, at *13 (S.D.N.Y. July 25, 2012) ("A declaratory judgment serves no 'useful purpose' when it seeks only to adjudicate an already-existing breach of contract claim."); *Narvaez v. Wilshire Credit Corp.*, 757 F.Supp.2d 621, 636 (N. D. Tex. 2010) (dismissing a declaratory judgment claim as "redundant" where it was asserted alongside a claim for breach of contract).

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss and/or for Summary Judgment, ECF 13, will be GRANTED IN PART and DENIED IN PART. Summary judgment will be granted in favor of Hebrew as to Nason's claims, in Counts I and II of its Amended Complaint, for $248,302.53. Count III of the Amended Complaint, seeking a declaratory judgment, will be dismissed. Hebrew's Motion is denied as to Nason's claims for attorneys' fees in Counts I and II of its Amended Complaint. A separate implementing Order follows.

Dated: October 13, 2020                                     /s/
                                                    Stephanie A. Gallagher
                                                    United States District Judge